MINNIE B. BROWN, RESPONDENT, *v.* NATHAN C. PHELPS, AS EXECUTOR, ETC., OF MILO MITCHELL, DECEASED, APPELLANT.

*Petition to a Surrogate's Court to compel the payment of a legacy — Code of Civil Procedure, sec. 2717 — when the Surrogate's Court can pass upon it — an executor cannot delegate his power to pay debts, to legatees.*

Upon an appeal from a decree of a surrogate requiring the executor of the will of Milo Mitchell, deceased, to pay to the petitioner a legacy given to her by the will, it appeared that the testator, by his will, gave and devised the rest and remainder of his estate, real and personal, to four of his children; that, in 1873, the executor, who then held moneys belonging to the estate, amounting to the sum of $8,720.19, after deducting therefrom $1,200 for his own services and expenses turned the whole estate over to three of the children (one of whom had acquired the interest of the fourth), and received from them a writing releasing him from any liability, as executor, to them. Thereafter the petitioner, who had obtained a judgment against the executor for the amount of her interest in the legacy, in an action brought by her in the Supreme Court of this State, instituted these proceedings to compel the executor to render an account and pay her legacy. The executor set up in his answer that there was no money in his hands with which to pay the petitioner's claim.

*Held,* that, as there was no written verified answer which set forth facts which cast any doubt upon the petitioner's claim, and as its validity or legality, therefore, was not denied, and had been conclusively established by the judgment in the Supreme Court, an answer, setting up merely that there was no money in the executor's hands to pay the claim, did not require the surrogate to dismiss the petition.

Upon the accounting the executor claimed that, inasmuch as he had transferred the entire estate to the residuary legatees, who had agreed to pay, and had in fact paid, debts of the testator to an amount which, if added to the amount of the debts paid by him, would exceed the value of the personal estate which came into his hands, he should not be required to pay the petitioner's judgment.

*Held,* that the surrogate was right in holding that the payments made by the legatees were not payments by the executor, and in refusing to allow him credit therefor.

That the executor could not delegate his powers, as such, to these legatees, nor did the payment by the legatees inure to his benefit as against the petitioner.

APPEAL from a decree made by the surrogate of Oneida county, upon the petition of Minnie B. Brown, the respondent, as legatee, requiring the executor to render an account and pay her legacy.

The appellant's testator, Milo Mitchell, left a last will and testament whereby, first, he " gave and bequeathed " to his wife one-third of his real estate " after paying all debts and claims which is now due or hereafter to become due on said real estate during her life ; " second, he " gave and devised " to his daughter Catherine $3,000, to be put in the hands of his son James Mitchell, " to pay the interest to said Catherine on the first day of January in each and every year during her life." If Catherine had issue at her death it was to be paid to such issue. If she had no issue it was to be equally divided between the testator's heirs; third, he gave and devised all the rest and remainder of his real and personal estate " equally between his children Caroline, James, Sarah and Isabell, after deducting all moneys heretofore given to them or loaned to them by note or otherwise; but no part of the above legacies to be paid until the said real estate is all clear from incumbrances. It is to be kept together as it now is until the rents pay for the same, under the control of my executor ; " fourth, he appointed the appellant as his executor.

The said testator died March 31, 1870. His will was duly proved and letters testamentary were duly issued to the appellant April 18, 1870. Upon the testator's death the appellant took possession of the testator's estate, both real and personal, and retained the same until after the death of Catherine, which occurred March 22, 1872. Catherine died without issue. No part of the $3,000 legacy to Catherine was ever paid to her. At the death of Catherine the testator's lawful heirs were Caroline Depuy, James Mitchell, Sarah Witherell and Isabell M. Wood, his children, and James M. Brown and Minnie B. Brown, the children of a deceased daughter.

On the 16th day of July, 1870, the appellant, as such executor, filed an inventory of the personal estate of his testator, showing that the personal assets were of the value of $16,657.47. The testator also left four farms. One was incumbered by a mortgage of $500 ; another known as the Stevens farm had been recently purchased by contract and was wholly unpaid for. The purchase-price of the Stevens farm was $14,000, which was payable $3,000 April 1, 1870, and the remainder, $11,000, April 1, 1875. These were the only incumbrances on the testator's real estate, except there was a continuing lease reserving rent upon one of the farms.

| | | |
|---|---:|---:|
| Debts of the testator were paid by the appellant amounting to.......................................... | $5,308 | 80 |
| He paid funeral expenses, and expenses of administration amounting to ............................... | 410 | 50 |
| He also paid on the land contract out of the personal property ........................................ | 2,000 | 00 |
| His commissions as executor were................... | 217 | 98 |
| Deducting the sum of these amounts............. | $7,937 | 28 |
| From the amount of the inventory.................. | 16,657 | 47 |
| Leaves unaccounted for and in his hands the sum of, | $8,720 | 19 |

James Mitchell presented a claim against the testator's estate for about $13,000, which was objected to by the executor and never allowed nor paid by him.

The appellant retained the possession and control of the testator's estate, both real and personal, until 1873, when, with the exception of $1,200, which was retained by him for his own services and expenses, he turned the whole estate over to James Mitchell (who had acquired the interest of Caroline therein in addition to his own), Sarah Witherell and Isabell Wood, and received from them the following writing: "In consideration of one dollar to each of us paid by Nathan C. Phelps, executor of the last will and testament of Milo Mitchell, late of the town of Remsen, N. Y., deceased, and the surrender to us of the goods, chattels and property of said deceased, we, James Mitchell, Sarah Witherell and Isabell Wood, children and heirs at law of the said Milo Mitchell, and legatees under the last will and testament aforesaid, do hereby forever release and discharge the said Nathan C. Phelps, as such executor as aforesaid, of and from the payment of any and all of the legacies given to us, or either of us, and of and from the delivery of any property, rights or interests to us, or either of us belonging, under such will as aforesaid; and the said Nathan C. Phelps is hereby discharged from his duties as such executor aforesaid as fully and completely as he could be by the courts, after a full and complete accounting. Witness our hands and seals this 17th of December, 1873. James Mitchell [L. S.], Sarah Witherell [L. S.], Isabell Wood [L. S.]."

James, Sarah and Isabell took a conveyance of the Steven's farm subject to the debt of $11,000, and assumed and agreed to pay the same. Of the foregoing surrender or transfer by the appellant to the residuary legatees the respondent and her brother James M. Brown had no notice. But the father of the respondent notified the appellant of the claim or interest of the respondent and her brother in this $3,000 legacy, so that such transfer was made by him with the knowledge of their rights therein.

Said legatees took the property of the estate, divided it among themselves, paid certain debts, amounting to $5,932.33, and allowed upon James Mitchell's claim $4,200, over and above the claims of the estate against him.

James M. Brown assigned his interest in said legacy to the respondent. After such assignment, and before the commencement of the proceedings before the Surrogate's Court, the respondent duly obtained a judgment in the Supreme Court of this State against the appellant for the amount of her interest in said legacy. Such judgment was for $1,911.73 damages and $143.82 costs, and was entered March 10, 1886. After this judgment was obtained the respondent instituted these proceedings before the surrogate of Oneida county. The appellant appeared and answered that he had in his hands no assets, money or property belonging to the estate; that he had turned the estate over to such legatees. He was then ordered to render an account, which he did. His account was contested by the respondent. The surrogate finally held and decided that he should be charged with the amount of the personal estate shown by the inventory to have been received by him, and be credited only with his commissions, the debts and expenses paid by him as hereinbefore set forth, amounting in all to the sum of $7,937.28, and that there was $8,720.19, to be accounted for by him, from which should be paid the respondent's judgment and the costs of that proceeding, which amounted to $2,529.29.

*Walter Ballou*, for the appellant.

*J. S. Baker*, for the respondent.

MARTIN, J.:

We do not think the appellant's claim that the Surrogate's Court had no jurisdiction of the proceedings instituted to compel the pay-

ment of this claim, can be sustained. Section 2,717 of the Code of Civil Procedure authorizes such a proceeding. There was no written, verified answer which set forth facts that càst any doubt upon the petitioner's claim ; nor was.there any denial of its validity or legality, either absolutely, or upon information and belief. Moreover, the validity and legality of the respondent's claim had been conclusively established, by a judgment between the parties, rendered in an action in the Supreme Court. The answer set up that there was no money in the appellant's hands with which to pay the petitioner's claim. Such an answer did not require the surrogate to dismiss the respondent's petition. It is only when it is not proved to the *satisfaction* of the *surrogate* that there is money or other personal property of the estate applicable to the payment or satis-faction of the petitioner's claim, and which may be so applied with-out injuriously affecting the rights of others entitled to priority or equality of payment or satisfaction, that the surrogate must dismiss the petition. (Code Civil Pro., § 2,718; *Matter of Macauley,* 94 N. Y., 574.) Obviously such was not the case here. The only question before the surrogate, on the merits, in this proceeding was, whether there was money or property belonging to this estate which was applicable to the payment of the respondent's judgment, and which might be so applied without affecting the rights of others entitled to priority, or equality of payment. To determine that question an accounting was ordered. On the accounting it was held, that there was money or property to the amount of $8,720.19 for which the appellant was liable to account, and which to the extent of the respondent's judgment and costs should be applied in payment of her claim.

But the appellant claims that inasmuch as he had transferred the entire estate to the residuary legatees, who agreed to pay the debts of the testator ; and inasmuch as they had paid debts to an amount which, if added to the amount of those paid by him, would exceed the value of the personal estate which came into his hands, he should not be required to pay the respondent's judgment against him. The surrogate has held otherwise. The appellant's method of discharg-ing the duties of executor and trustee is novel, but not to be com-mended. If that method of disposing of a trust estate were to be upheld, a most dangerous precedent would be established. These

legatees may have paid themselves and other creditors the amount claimed, but the executor has not. Nor has the executor passed upon the justice or validity of these claims, except that of James which he had already rejected. It may be that these claims were just and valid, and would have been allowed and paid by the executor if they had been properly presented to him, and he had remained at his post of duty. They were, however, neither allowed nor paid by him. They were voluntarily paid by these legatees. This executor could not delegate his powers, as such, to these legatees, nor do the payments by the legatees inure to his benefit as against this respondent. (*Matter of Keef*, 43 Hun, 98; *S. C.*, 6 N. Y. State Rep., 587.) The debts against this estate are also, evidently, barred by the statute of limitations.

At law an executor will be charged with all the assets that come to his hands to be administered, and he must discharge himself by showing a legal administration of all of them. A court of equity will, however, adjust the accounts of the executor upon equitable principles. (1 Perry on Trusts, § 407.) If the appellant had administered his testator's estate as he was in duty bound to do, on a final settlement before the surrogate the rights of the respondent and her brother, as well as the rights of the other legatees under the will, could have been determined and adjusted, and the appellant would then have been properly discharged from his liability as such executor. Although the duty of this executor was plain, yet, instead of discharging his legal obligations to the creditors and legatees, he retains for his own services at least five times as much as the surrogate finds him entitled to, and with knowledge of the respondent's claim surrenders the whole estate to the other legatees, leaving these infant heirs of the testator wholly unprotected, and the payment of their legacies unprovided for. There may have been no collusion between the appellant and the residuary legatees, still, the facts are not such as to establish any very strong equities in favor of this executor. We think the surrogate was right in holding that the payments made by these legatees were not payments by the executor; that there was sufficient property in the hands of this executor to pay the respondent's judgment and costs; and in making the decree appealed from.

It follows that the decree and order appealed from should be affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred.

Decree of the surrogate of Oneida county affirmed, with costs.